**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KENESHA LATTIMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  26-00523 (UNA) |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff, appearing *pro se*, has filed a "Complaint for Depravation of Constitutional Rights" and an application to proceed *in forma pauperis* (IFP).  For the following reasons, the Court grants the IFP application and dismisses the complaint for failure to state a claim.  28 U.S.C. § 1915 (e)(2)(B)(ii).

I.

Plaintiff, a resident of Columbus, Ohio, sues the District of Columbia and Broward County in an unidentified State under 42 U.S.C. § 1983.  She claims that each municipality, through its policies, practices, and customs, "directly contributed to ongoing violations of [her] civil rights including unlawful detention, denial of access to courts, election interference, and familial separation," Compl., ECF No. 1 at 2, and seeks equitable relief and money damages, *id*. at 23-24.

II.

Plaintiff's disjointed allegations are wide-ranging.  In 2013 she "was arrested" in Broward County "without a valid warrant or probable cause." *Id*. at 5 ¶ 21.  For this reason apparently, "Plaintiff's continued incarceration was arbitrary, punitive, and untethered to any legitimate

governmental interest." *Id*. ¶ 24.  In an unidentified proceeding, the "state relied on evidence from non-appearing witnesses without affording Plaintiff the opportunity for confrontation," "[c]onfidential informants were introduced while using statements from parties that were unavailable at trial," and an [i]nformant testified against evidence." *Id*. at 6 ¶¶ 26, 28, 30.  In 2015, Plaintiff "received word" of her grandfather's funeral that she "was unable to attend." *Id*. ¶¶ 31, 32.  But when Plaintiff returned home, "she encountered informants posing as family members." *Id*. ¶ 33.

In 2019, "Plaintiff was taken into custody for an alleged probation violation arising from the same underlying arrest and proceedings that lacked constitutional validity," and "[t]he 2020 election was 'stolen' due to this unlawful incarceration." *Id*. ¶¶ 34, 35.  In 2021, "state informants posing as family members launched false statements to authorities saying that Plaintiff's son was not hers," and on November 26, 2024, Plaintiff's "child was unlawfully adopted." *Id*. ¶¶ 36, 39.  "During the 2024 federal election cycle, Plaintiff sought to participate as a write-in candidate and pursued ballot-access relief by filing," on October 8, 2024, a petition for writ of mandamus that, on February 3, 2025, "was dismissed as frivolous." *Id*. ¶¶ 38, 40; Compl. Ex. (page one of Memorandum Opinion issued in *Lattimore v. Gray*, No. 24-cv-3347 (UNA) (D.D.C. Feb. 3, 2025).[1]

### III.

Although *pro se* complaints are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), they must comport with

---

[1]  In that case, Plaintiff similarly alleged manipulation of the 2024 U.S. presidential election "and discussed her attempts to run for U.S. President; her previous unlawful arrests and incarceration; . . . custody disputes and investigations; and various other topics" that the court ultimately found stated frivolous claims over which it lacked subject-matter jurisdiction. *Lattimore on behalf of Biden v. Gray*, 2025 WL 370978, at *1.

the Federal Rules of Civil Procedure, *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of (1) the grounds for the court's jurisdiction, (2) the claim showing that the pleader is entitled to relief, and (3) the relief demanded. Fed. R. Civ. P. 8(a). It "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Thus, the pleader must allege enough facts to permit a court "to infer more than the mere possibility of misconduct." *Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 150 (D.C. Cir. 2015) (cleaned up). The pleading rules ensure that defendants receive fair notice of the claim being asserted so that they can prepare a responsive answer, mount an adequate defense, and determine whether the doctrine of *res judicata* applies. *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). They also assist the court in determining whether it has jurisdiction over the subject matter.

Section 1983 creates a cause of action against a "person" who deprives another person of rights "secured by the Constitution and [federal] laws" while acting under the authority of State or District of Columbia "law, statute, ordinance, regulation, custom or usage[.]" The defendant municipalities are "among those persons to whom § 1983 applies" if the deprivation resulted from an "official municipal policy[.]" *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978); *see Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 691 (D.C. Cir. 2009) (the District of Columbia may be liable under § 1983 "only for constitutional torts arising from action pursuant to official municipal policy") (cleaned up)). To state a municipal liability claim, a plaintiff must allege factually (1) a predicate constitutional violation and (2) a policy or custom of the municipality that caused the violation. *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Even if Plaintiff has

sufficiently pleaded a constitutional violation, the complaint fails on the second element of causation.  To plead  causation, a plaintiff must allege that the municipality (1) "explicitly adopted the policy that was the moving force of the constitutional violation"; (2) "knowingly ignore[d] a practice that was consistent enough to constitute custom"; or (3) failed to "respond[ ] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations."  *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (citations and internal quotation marks omitted).

In the four counts of the prolix complaint, ECF No. 1 at 11-22, Plaintiff seeks to hold the defendant municipalities liable for matters beyond their purview.  The most glaring example is Count 1 captioned "Denial of Access to Courts."  There, Plaintiff alleges that the District, "through its judiciary and court administration" maintained "policies, longstanding practices, and customs" that delayed "adjudication of civil rights actions, withholding timely ruling" on her "requests for emergency or extraordinary relief, and dismissing claims."  Compl. at 11 ¶ 66; *see also id*. at 13 (alleging interference "with Plaintiff's political participation and candidacy during multiple federal election cycles . . . through the use of constitutionally deficient judicial and administrative procedures that . . . suppressed political speech, candidacy and voter participation").  But the ruling Plaintiff offers in support, *see supra* at 2, was issued in a case in this federal district court and is grounded in federal law, not D.C. policy or custom.

The counts of the complaint against Broward County fare no better.  Allegedly, the county "facilitated an unlawful arrest and prolong[ed] incarceration with a state created danger and fabricated testimony."  Compl. at 4.  That assertion, and the conclusory allegations comprising each count of the complaint, simply fail to identify a Broward County policy, practice or custom

as the "moving force" behind the elusive constitutional violations.[2] *Monell*, 436 U.S. at 694. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law" and "for which the municipality is actually responsible.") (cleaned up)); *Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014) ("[I]t is only 'when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.") (quoting *Monell*, 436 U.S. at 694) (ellipses in original)); *Mackey v. Helfrich*, 442 F. App'x 948, 950 (5th Cir. 2011) ("A county judge acting in his judicial capacity to enforce state law does not act as a municipal official or lawmaker.") Therefore, this case will be dismissed by separate order.

_____/s/_____
TANYA S. CHUTKAN

Date: June 11, 2026                      United States District Judge

---

[2]     The constitutional right of access -- the gravamen of the complaint -- "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To state an access claim, the "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant" of a "nonfrivolous" and "arguable" claim, and the "allegations must describe the official acts frustrating the litigation." *Id*. at 415-16. Plaintiff's injuries, to the extent discernible, resulted from the dismissal and/or delayed resolution of her court cases, which confirms access just not to her liking. Further, Count II asserts "election interference" and "political disenfranchisement," but "the power to regulate elections" and "to determine the conditions under which the right of suffrage may be exercised" lies with the States, not municipalities. *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 543 (2013) (examining U.S. Const. amend. X). And the claims asserting "interference with familial association," Count III, belong in state court. *See Lattimore v. Municipality of Columbus*, 2026 WL 640465, at *2 (D.D.C. Mar. 6, 2026) ("the domestic relations exception deprives a federal district court of the power to issue or modify child custody decrees or to decide child support obligations or custody determinations") (citations omitted)).